UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRODERICK V. BULLOCK, SR.,

    Petitioner,

v.                                           CAUSE NO. 3:19-CV-529-DRL-MGG

WARDEN,

    Respondent.

## OPINION & ORDER

Broderick V. Bullock, Sr., a prisoner without a lawyer, filed a habeas corpus petition challenging his disciplinary hearing in case MCF-19-02-53, where a hearing officer found him guilty of battery in violation of Indiana Department of Correction (IDOC) policy B-212. ECF 1 at 1. Mr. Bullock was sanctioned with the loss of 90 days earned credit time and a one-step demotion in credit class. *Id.* The Warden filed the administrative record. Mr. Bullock filed a traverse.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the factfinder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 454 (1985).

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an

examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

On February 4, 2019, Officer S. Abbott issued a conduct report charging Mr. Bullock with violating offense B-212, which prohibits an inmate from "[c]omitting a battery upon another person." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. https://www.in.gov/idoc/files/02-04-101%20Appendix%20I%206-4-2018.pdf. ECF 13-1 at 1. The conduct report states:

> On February 2, 2019 at approximately 8:50 am Sgt K. Reich called me, Officer S. Abbott, on the ¾ side of CHU from the pod informing me that Offender Bullock, Broderick DOC# 111916 out of C-101 had stated over his intercom that someone had thrown bug spray mixed with hot water on him. I proceeded to the ½ side to cell 101, as I was approaching, Offender Bullock turned to show me his injuries. I then called Sgt. K. Reich to inform her that he had what appeared to be burns on his face and chest. I then called a signal 3000 and began locking the ½ side down from recreation. Offender Bullock was taken off the unit to OSB by medical. I was then asked to go to custody to view the camera footage from the incident to see if I could identify the offender that threw the hot water on Offender Bullock. While watching the camera footage I was able to identify Offender Gates, Steven DOC# 962108 out of C-136 as the offender who threw the hot water on Offender Bullock. As I continued to watch the camera footage, I saw Offender Gates and Offender Bullock get into an altercation with their fist[s] after Offender Gates had assaulted Offender Bullock with hot water.

*Id.* (errors in original).

Mr. Bullock's hearing was held on March 19, 2019. ECF 13-11 at 1. After being found guilty of violating offense B-202, Mr. Bullock filed an administrative appeal. ECF 13-12 at 1. The facility head granted a rehearing on April 25, 2019. *Id.*

On May 8, 2019, the same conduct report charging Mr. Bullock with battery for violating offense B-212 was reissued to him for his rehearing. ECF 13-1 at 1. He was notified of the rehearing on May 9, 2019, when he was served with the conduct and screening reports. ECF 13-1 at 1, 13-2 at 1. Mr. Bullock asked for the assistance of a lay advocate and one was provided for him. ECF 13-2 at 1, 13-3 at 1. He pleaded not guilty and requested the video of the incident, his medical record, and pictures of his injuries. ECF 13-2 at 1, 13-5 at 1, 13-6 at 1, 13-7 at 1.

> A summary of the video review was subsequently prepared and states:
>
> On May 14, 2019 I (Officer S. Hall) reviewed the DVR for CHU 1/2 on February 2, 2019 starting at 8:45 am by the request of offender Bullock, Broderick #111916 in regards to case number MCF-19-02-0053.
>
> Upon the review of the DVR for CHU 1/2 the DVR show that Offender Bullock was assaulted by another offender with a hot liquid. [Y]ou then see Offender Bullock take off his t-shirt and wipe it off his face as he walked toward the phones. [T]hen Offender Bullock stops at a table and places his foot and one of the stools and ties his shoe then he ties the other. After tying his shoes he then walks across the dayroom and find[s] the offender that had assaulted him and started throwing closed fist punches at him.

ECF 13-5 at 1 (errors in original).

On May 16, 2019, the hearing officer conducted Mr. Bullock's rehearing. ECF 13-4 at 1. The hearing officer noted Mr. Bullock's statement: "'Whether I'm found guilty or not the procedural errors are still the same.'" *Id.* On the basis of the conduct report, offender's statement, physical evidence, and video evidence, the hearing officer found Mr. Bullock guilty of violating offense B-212. *Id.* He was sanctioned with a loss of 90 days earned credit time and a one-step demotion in credit class. *Id.* Mr. Bullock appealed the hearing officer's decision, but his appeals were denied. ECF 13-8 at 1, 13-9 at 1, 13-10 at 1.

3

In his petition, Mr. Bullock has not raised any due process violations with respect to his May 16, 2019 rehearing. ECF 1 at 3. Instead, he contends the rehearing should not have occurred at all. *Id.* Mr. Bullock maintains that because there were due process violations during his original proceeding and because the facility head did not decide the original appeal within 30 days, as mandated by IDOC policy, the conduct report should have been dismissed without a rehearing and his good time credit time returned to him. *Id.*

Due process protections for disciplinary proceedings under 28 U.S.C. § 2254 are set forth in cases such as *Hill*, 472 U.S. at 454, and *Wolff,* 418 U.S. at 563-67. Under *Wolff* and *Hill,* Mr. Bullock received all the process to which he was entitled during his May 16, 2019 rehearing. For example, the conduct report explained the basis for the battery charge and the screening report provided Mr. Bullock with advance written notice of the charge. ECF 13-1 at 1, 13-2 at 1. Mr. Bullock was afforded the opportunity to call witnesses and present documentary evidence in his defense, appear before the hearing officer, and make a statement at the hearing concerning the charge. ECF 13-2 at 1, 13-4 at 1. Mr. Bullock also requested and was given the assistance of a lay advocate. ECF 13-3 at 1. In addition, the hearing officer issued a written reason for his decision and the sanctions that were imposed. ECF 13-4 at 1. Furthermore, the hearing officer's decision was supported by sufficient evidence because the conduct report and video evidence showed that Mr. Bullock battered another inmate by striking him with closed fist punches. ECF 13-1 at 1, 13-5 at 1. *See McPherson*, 188 F.3d at 786 (conduct report alone can be enough to support a guilty finding). Accordingly, the hearing officer's decision was neither arbitrary nor unreasonable; there were no constitutional defects in Mr. Bullock's rehearing proceedings.

To the extent that Mr. Bullock alleges due process violations or procedural errors from the original proceeding, he received the relief he sought when the facility head vacated his original guilty

finding and granted the rehearing. ECF 1 at 3, 13-12 at 1. In doing so, the facility head acknowledged there was a procedural error in the original proceeding and ordered the rehearing to ensure that Mr. Bullock's due process rights were protected. ECF 13-12 at 1. In other words, Mr. Bullock had been granted relief to remedy any procedural errors in the original hearing, and those errors had no effect on his rehearing proceedings. This includes the fact that the facility head did not decide the original administrative appeal within the 30-day period established by IDOC policy. *See* The Disciplinary Code for Adult Offenders, Policy & Administrative Procedure No. 02-04-101, § X(D)(5) (effective June 1, 2015), at https://www.in.gov/idoc/files/02-04-101_The_Disciplinary_Code_for_Adult_Offenders_6-1-2015.pdf. ECF 13-13 at 3. Any error in the original administrative appeal process is irrelevant to Mr. Bullock's rehearing proceedings. Furthermore, failure to follow policy is not a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas relief"); *Keller v. Donahue*, 271 F. Appx. 531, 532 (7th Cir. 2008) (inmate's claim that prison did not follow internal policies had "no bearing on his right to due process").

In sum, Mr. Bullock has not asserted a viable claim for habeas corpus relief. He did not allege any due process violations during his rehearing proceedings, and any due process violations related to his original hearing were remedied when the facility head vacated his original guilty finding and ordered the rehearing.

As a final matter, Mr. Bullock has filed three motions (ECF 12, 24, 25) and two letters (ECF 26, 27) attempting to expedite this case. Such motions and letters are unnecessary. It appears as though Mr. Bullock believes that his filings should receive immediate attention, superior to all other matters before the court. Certainly, this case is important, but all cases filed in this court are important. This is not the only case pending before this court. It takes time to accurately review and justly rule on each filing. Doing that is delayed by unnecessary motions and letters like those Mr. Bullock has filed in this

case. Because they are unnecessary, the multiple requests to expedite this case (ECF 12, 24, 25, 26, 27) will be denied.

If Mr. Bullock wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F. 3d 665, 666 (7th Cir. 2009). However, he may not proceed *in forma pauperis* on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, Broderick V. Bullock's petition for writ of habeas corpus (ECF 1) is DENIED and his multiple requests to expedite this case (ECF 12, 24, 25, 26, 27) are DENIED AS UNNECESSARY.

SO ORDERED.

April 17, 2020                                             *s/ Damon R. Leichty*
                                                          Judge, United States District Court